**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TIMOTHY LANKFORD,

                              Petitioner,

            - v -                                    9:21-CV-22
                                                     (BKS/DJS)

TIMOTHY McCARTHY,

                              Respondent.

**APPEARANCES:**                    **OF COUNSEL:**

TIMOTHY LANKFORD
Petitioner *Pro Se*
15-B-1162
Cayuga Correctional Facility
P.O. Box 1186
Moravia, New York 13118

HON. LETITIA JAMES                  PAUL B. LYONS, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
28 Liberty Street
New York, New York 10005

**DANIEL J. STEWART**
**United States Magistrate Judge**

### <u>REPORT-RECOMMENDATION and ORDER</u>[1]

    *Pro se* Petitioner Timothy Lankford was convicted of second-degree burglary and

attempted petit larceny at the conclusion of a jury trial held in Onondaga County Court.

He was sentenced to an aggregate determinate prison term of 15 years followed by 5 years

---

[1] This matter was referred to the undersigned for a report-recommendation pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

of post-release supervision. Petitioner presently seeks a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the grounds of ineffective trial counsel, denial of due process, insufficient evidence, and ineffective appellate counsel. Dkt. No. 1, Pet., pp. 6-27.[2] Respondent has filed a Memorandum of Law in Opposition to the Petition. DKt. No. 13. Petitioner filed a Traverse.   Dkt. No. 24.   For the reasons that follow, this Court recommends that the Petition be **denied.**

## I. BACKGROUND

On November 1, 2013, Petitioner was arrested, and the following day Petitioner was arraigned on charges of burglary in the second degree and attempted petit larceny. Petitioner was indicted on these charges on February 2, 2013 and chose to have a jury trial.  He was convicted as charged at trial.  The court then appointed new counsel for Petitioner who filed a CPL § 330.30 motion to set aside the verdict.  Counsel did this on the basis of ineffective trial counsel and that the verdict was based on legally insufficient evidence.  The Court denied the motion and subsequently sentenced Petitioner.

Next, Petitioner filed a *pro se* CPL § 440.10 motion to vacate his conviction on the grounds that trial counsel was ineffective.  He gave several reasons for the ineffectiveness. This motion was denied as being procedurally barred because it could be raised on direct appeal.   It was alternatively denied on the merits.   The Appellate Division, Fourth Department, denied Petitioner's application for leave to appeal.

---

[2] Citations to Petitioner's submissions are to page numbers assigned by the Court's CM/ECF system.

Petitioner filed his direct appeal with counsel.  The counseled appeal asserted that the verdict was based on legally insufficient evidence and was against the weight of the evidence, and the sentence was excessive.  Petitioner also filed a *pro se* brief in which he asserted additional appeal grounds: that trial counsel was ineffective; the court erroneously permitted the indictment to be amended; and the verdict was based on legally insufficient evidence and was against the weight of the evidence.  The Appellate Division unanimously affirmed the conviction.

Petitioner then filed a *pro se* motion for re-argument which the court denied and filed counseled and *pro se* applications for leave to appeal to the Court of Appeals.  The Court of Appeals denied leave.

Next, on January 19, 2019, Petitioner filed a *pro se* coram nobis motion with the Appellate Division.  This motion claimed ineffective appellate counsel.  The Appellate Division denied the motion. The Court of Appeals denied Petitioner's application for leave to appeal.

On July 16, 2019 Petitioner filed a *pro se* CPL § 440.10 motion to vacate his conviction in county court.  The court denied the claims on both procedural grounds and on the merits.  The Appellate Division denied Petitioner's application for leave.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003

WL 22234697, at *3 (S.D.N.Y. Aug. 28, 2003). A federal court may not grant *habeas*

relief to a state prisoner on a claim unless the state court adjudicated the merits of the

claim and such adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Hawkins v. Costello*, 460 F.3d 238, 242 (2d Cir. 2006).

The Second Circuit has summarized the application of the standard of review

under AEDPA as follows:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief: 1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled? 2) If so, was the state court's decision "contrary to" that established Supreme Court precedent? 3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams v. Taylor*, 529 U.S.

362 (2000) and *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)). The standard

of review under § 2254(d) is "highly deferential" and "demands that state-court decisions

be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "[A] state

prisoner must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and

comprehended in existing law beyond any possibility for fair minded disagreement."

*Harrington v. Richter*, 562 U.S. 86, 103 (2011).

4

The phrase "clearly established Federal law" refers to "the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is "contrary to" established Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by th[e] Court on a question of law or if the state court decides a case differently than th[e] Court has on a set of materially indistinguishable facts." *Id.* at 413. A state court decision is an "unreasonable application" of established Supreme Court precedent "if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

### III. DISCUSSION

### A. Sufficiency of the Evidence

#### 1. Procedural Bar

Federal habeas review of a state-court conviction is generally prohibited if a state court rested its judgment on a state procedural requirement that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *see also Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (explaining that under *Wainwright v. Sykes*, 433 U.S. 72 (1977), "an adequate and independent finding of

procedural default will bar federal habeas review of the federal claim"); *Garcia v. Lewis*, 188 F.3d 71, 76 (2d Cir. 1999); *Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995). In the context of habeas review, "the application of the independent and adequate state ground doctrine is grounded in concerns of comity and federalism." *Coleman v. Thompson*, 501 U.S. at 730. "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Id.* at 732.

Here, Petitioner's trial counsel raised only a "general motion for a trial order of dismissal based on the failure of the People to prove a prima [facie] case." *People v. Langford*, 162 A.D.3d at 1584 (internal quotation omitted). The Appellate Division, therefore, found the claim unpreserved for review. *Id.* Under the New York contemporaneous objection rule, "an issue is preserved for appeal as a matter of law only when the appellant objected on that ground during the trial." *Fernandez v. Smith*, 558 F. Supp. 2d 480, 489 (S.D.N.Y. 2008) (citing N.Y. Crim Proc. Law § 470.05). In order to preserve a challenge to the sufficiency of the evidence a defendant must move for a trial order of dismissal making a specific objection. *See People v. Hawkins*, 11 N.Y.3d 484, 492 (2008). Furthermore, a defendant who moves to dismiss at the close of the People's case must renew that motion at the close of his case in order to preserve the objections raised therein. *People v. Kolupa*, 13 N.Y.3d 786, 787 (2009); *People v. Hines*, 97 N.Y.2d 56, 61 (2001). It is well established that New York's contemporaneous objection rule is an "adequate" state ground that may bar federal habeas review. *See*, *e.g.*, *Brown v. Ercole*, 353 F. App'x 518, 520 (2d Cir. 2009); *Richardson v. Greene*, 497 F.3d 212, 219 (2d Cir.

2007).  Accordingly, the Appellate Division's finding that Petitioner's sufficiency of the evidence claim was not preserved is an "adequate" state ground barring habeas review. It is therefore procedurally barred from federal review.

### 2. Merits

Even if not procedurally barred, this claim is not a basis for relief on the merits.

In seeking habeas relief based on alleged insufficiency of the evidence, a petitioner "bears a 'very heavy burden.'" *Torres v. O'Meara*, 353 F.Supp.3d 180, 188 (N.D.N.Y. 2019) (quoting *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000)).  The standard of review for a legal sufficiency claim is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Hogan v. West*, 448 F.Supp.2d 496, 512 (W.D.N.Y. 2006) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)) (emphasis in original).  Therefore, a habeas court may only overturn a conviction if, based upon the evidence presented at trial, "*no* rational trier of fact could have found that the prosecution established the defendant's guilt beyond a reasonable doubt." *Id.* (emphasis in original).

Here, the jury's findings do not fall below that "threshold of bare rationality" to render the verdict legally insufficient. *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). Petitioner was located at the scene of the crime-in-progress with his two co-defendants, one of whom pled guilty to the charges. SR. at pp. 202 & 346.  The officers on the scene recovered latex gloves and black hats from the other two individuals, and found a third set of gloves and a hat discarded in an alleyway behind the home.  SR. at p. 347.  Petitioner

denied knowing his co-defendant when questioned, but his co-defendant's mother later testified that the two are cousins who have known each other for their whole lives and who had lived together previously. SR. at p. 348.

The jury was convinced by these facts, and the state's case as a whole, of Petitioner's guilt. There is nothing to suggest that its findings have no basis in rationality. Petitioner's conviction was supported by legally sufficient evidence.

## B. Alleged Alteration of the Indictment

Petitioner asserts that his constitutional right to due process and fair trial was violated when the trial court allowed the prosecution to pursue and charge the jury with an acting in concert theory. Pet. at p. 22. The Fifth Amendment right to a grand jury indictment has not been incorporated against the states through the Fourteenth Amendment. *LanFranco v. Murray*, 313 F.3d 112, 118 (2d Cir. 2002). "The amendment of indictments is generally a matter of state law and is not ordinarily cognizable on habeas corpus review." *O'Halloran v. Gonyea*, 2015 WL 93716, at *20 (N.D.N.Y. Jan. 7, 2015) (citing cases). "Accordingly, any alleged impropriety in the amendment of the indictment . . . is therefore beyond this Court's review." *Staley v. Greiner*, 2003 WL 470568, at *11 (S.D.N.Y. Feb. 6, 2003) (internal quotation omitted).

## C. Ineffective Assistance of Trial Counsel

### *1. Procedural Issues*

For a petitioner to proceed on a federal habeas corpus claim, he must first exhaust available state remedies to ensure that the state is given the opportunity to consider and correct an alleged constitutional violation, *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir.

2014), or show that there is no available state corrective process, or that the remedy would not be effective.  28 U.S.C. § 2254(b)(1); *see also Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001).  The exhaustion requirement is intended to maintain the "dual judicial system" and allow for both the federal and state judicial systems to function independently.  *Daye v. Attorney Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).  To uphold the independence of each judicial system, the state courts must be given the opportunity to consider and correct any violations of any laws. *Id.*  In order to meet the requirements of exhaustion, a petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"; a petitioner can do this by presenting his claim to the highest court in the state.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Morgan v. Bennett*, 204 F.3d 360, 369 (2d Cir. 2000).  A federal claim must also be "fairly presented" to the state courts to meet the exhaustion requirements. *See Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). This requires that a prisoner present the essential facts and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.  *Jackson v. Conway*, 763 F.3d at 133.  Although a state prisoner is not expected to cite the Constitution perfectly in order to satisfy this presentment requirement, the prisoner must assert a claim that is likely to alert the state court about the federal nature of the claim. *Id.* (citing *Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011)).

Here, Petitioner presents ten specific claims of ineffectiveness on the part of his trial counsel. *See generally* Traverse.  Of these ten claims, only one, related to the prosecutor's summation, appears to have been raised in Petitioner's leave applications to

the Court of Appeals.    SR at 387-405.  Petitioner has not provided any reason that his

procedural default may be excused.

### 2. Merits of Ineffectiveness Claims

Petitioner's claims, in any event, lack merit.

"To establish ineffective assistance of counsel 'a defendant must show both

deficient performance by counsel and prejudice.'" *Premo v. Moore*, 562 U.S. 115, 121

(2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).    Deficient

performance requires a showing that "counsel's representation fell below an objective

standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  "A

court considering a claim of ineffective assistance must apply a 'strong presumption' that

counsel's representation was within the 'wide range' of reasonable professional

assistance."  *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland v.*

*Washington*, 466 U.S. at 689).  A person challenging a conviction thus must show "that

counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S.

at 687.  Establishing prejudice requires Petitioner to show "a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been

different." *Strickland v. Washington*, 466 U.S. at 694.

The *Strickland* test imposes a "high bar." *Padilla v. Kentucky*, 559 U.S. 356, 371

(2010). Under the AEDPA, "it is not enough to convince a federal habeas court that, in

its independent judgment, the state-court decision applied *Strickland* incorrectly." *Bell v.*

*Cone*, 535 U.S. 685, 699 (2002) (citing *Williams v. Taylor*, 529 U.S. at 411).  "Rather,

[Petitioner] must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.*  On this record, Petitioner cannot make this showing.  Nothing about the Appellate Division's rejection of Petitioner's ineffectiveness claim was unreasonable.

### a. Counsel's communication with Petitioner

Petitioner generally asserts a lack of visits and strategic discussion on the part of his counsel, *see* Pet. at pp. 16-19, as a basis for his ineffective assistance of counsel claim. "There is no required minimum number of meetings between counsel and client." *Farr v. Greiner*, 2007 WL 1094160, at *31 (E.D.N.Y. Apr. 10, 2007) (citing cases).  In addition, "courts have consistently held 'that the brevity of consultation time between a defendant and his counsel alone cannot support a claim of ineffective assistance of counsel.'" *Collins v. Connolly*, 2013 WL 2443667, at *9 (S.D.N.Y. May 17, 2013), *report and recommendation adopted*, 2013 WL 6085408 (S.D.N.Y. Nov. 19, 2013) (quoting *Raposo v. United States*, 2004 WL 1043075, at *3 (S.D.N.Y. May 7, 2004)).

> Moreover, Petitioner does not identify how, if at all, he was prejudiced by his attorney's alleged failure to communicate, nor how his position at trial would have been improved with additional opportunities for consultation with his attorney.  Accordingly, trial counsel's alleged failure to communicate with Petitioner is inadequate to sustain Petitioner's claim of ineffective assistance of counsel.

*Raposo v. United States*, 2004 WL 1043075, at *3.

### b. Failure to obtain key evidence and interview key witnesses

Petitioner claims that his trial counsel was ineffective because he did not examine the clothing that Petitioner was wearing on the night of the incident and he did not

interview Petitioner's co-defendant, or his girlfriend, both of whom Petitioner believes would prove his innocence and corroborate his version of events. Pet. at p. 18.

The duty to investigate a case "requires counsel 'to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.'" *Greiner v. Wells*, 417 F.3d 305, 320-21 (2d Cir. 2005) (quoting *Strickland v. Washington*, 466 U.S. at 691). The Second Circuit has long held that "the decision to call or bypass particular witnesses is peculiarly a question of trial strategy." *U. S. ex rel. Walker v. Henderson*, 492 F.2d 1311, 1314 (2d Cir. 1974). Defense counsel's decisions in this area are "afford[ed] substantial deference." *United States v. Cureton*, 2022 WL 17726842, at *3 (2d Cir. Dec. 16, 2022).

Regarding the alleged failure to properly investigate potential witnesses, the factual record clearly establishes a potential basis for counsel's actions. Counsel, in fact, made efforts to arrange for Petitioner's co-defendant to testify by sending a fax to the facility where the co-defendant was housed. SR. at p. 40. In response, counsel received a fax back which indicated that the co-defendant would not testify even if he was subpoenaed. *Id.* Counsel was not required to put continuous efforts into producing a witness who was refusing to testify.

Testimony from Petitioner's girlfriend would have also likely been fruitless. As the state trial court found, her testimony was likely inadmissible hearsay. SR. at p. 90. Moreover, her testimony that Petitioner was with her and planning to go purchase marijuana could have been viewed by counsel as unhelpful and, in any event did not preclude his potential participation in the crime. SR. at pp. 25 & 90.

Petitioner also claims that counsel was ineffective for failing to obtain and examine the clothing he was wearing the night of his arrest. Pet. at p. 19. Other than Petitioner's statement that counsel did not take this action, there is no evidence in the record regarding whether counsel did or did not review Petitioner's clothing. That claim, therefore, is entirely conclusory and not a basis for habeas relief. *Miller v. New York*, 275 F. Supp. 2d 294, 299 (E.D.N.Y. 2003).

### c. Failure to Seek Suppression of Police Report

Petitioner next argues that counsel was ineffective in failing to seek the suppression of oral statements given by Petitioner to a police officer at the scene that were then included on a police report. Pet. at p. 17. Petitioner argues that the statements were factually inaccurate, but makes no claim that they were illegally obtained. *Id.*; *see also* Traverse at pp. 14-15.[3] Given that claim, it does not appear there was a basis for seeking, for example, a *Huntley* hearing which could have challenged the voluntariness of Petitioner's statements given to police. *See People v. Huntley*, 15 N.Y.2d 72 (1965). Because a *Huntley* motion would not be the appropriate means to resolve this dispute, it would be frivolous for counsel to move for such a hearing, and counsel is not constitutionally ineffective for not making that motion.

### d. Suppression of Physical Evidence

Petitioner contends that counsel's "fail[ure] to move to suppress physical evidence not attributed to petitioner" rendered his performance constitutionally ineffective. Pet. at

---

[3] Petitioner does suggest that the failure to have his statement videotaped would have warranted suppression, Traverse at p. 15, but cites no New York or federal law to support that assertion.

p. 18.  Petitioner appears to be referring to clothing items found on the ground at the scene of the crime that did not, according to Petitioner contain his DNA and were therefore irrelevant.  Traverse at p. 15.  Three individuals were charged in this crime and "[g]loves and masks were found on the other two men, and a third set of gloves and a black ski mask were found discarded in the alleyway next to the home" that had been burglarized.  *People v. Lankford*, 162 A.D.2d 1583 (4th Dep't 2018).  All three individuals were apprehended at the scene.  *Id.*  In light of that, the discarded items were clearly relevant to the prosecution's theory that three individuals, including Petitioner, were involved in the crime and trial counsel's failure to seek suppression of them based on purported irrelevance most certainly was not ineffective assistance.

<u>e. Counsel's failure to properly oppose the indictment amendment</u>

Petitioner states that counsel "failed to demad [sic] an adjournment for an evidentiary hearing for a [sic] in court examination of the grand jury minutes and/or admit proof supporting their amendment pursuant to C.P.L 200.70(1) and *People v Rivera*, 84 N.Y.2d 766." Pet. at p. 19. The record reflects that Petitioner's trial attorney specifically objected to permitting amendment of the indictment.  10/22/2014 Tr. at 6.  Even assuming that Petitioner was entitled to an adjournment of the proceedings under section 200.70, the decision whether to request an adjournment is typically a strategic choice which cannot establish deficient performance.  *Lopez v. United States*, 2017 WL 1424328, at *6 (S.D.N.Y. Apr. 20, 2017).  Moreover, Petitioner "has not demonstrated that it was unreasonable for trial counsel to decide not to request an adjournment." *Afrika v. Herbert*,

2007 WL 2323500, at *5 (W.D.N.Y. Aug. 10, 2007).  Nor has he made a credible, specific claim of prejudice resulting from the failure to request an adjournment.

<u>f. Counsel's failure to demand a bill of particulars</u>

Petitioner indicates that counsel's failure to request a bill of particulars "allowed the prosecution to deliberately keep the petitioner in ignorance of the matters vital to preparation of a defense and it postponed diligent investigation." Pet. at p. 17.  "A defense attorney's failure to request a bill of particulars, in an[d] of itself, does not constitute ineffectiveness." *Slater v. Conway*, 2012 WL 777481, at *12 (W.D.N.Y. Mar. 7, 2012). Petitioner has failed to demonstrate that prior to trial he lacked any pertinent discovery that would have otherwise been available to him had a bill of particulars been requested. As such, he cannot show prejudice from the failure to request one.  *Id.*; *see also Slater v. Conway*, 2012 WL 777481, at *12 (W.D.N.Y. Mar. 7, 2012).  Petitioner's conclusory allegations regarding the alleged lack of preparation are insufficient.  *Russell v. Rock*, 2008 WL 5333327, at *3 (E.D.N.Y. Dec. 19, 2008).

<u>g. Claims regarding El-Rahman's testimony</u>

Petitioner raises multiple issues surrounding the testimony of his co-defendant's mother, Johnnie El-Rahman.  He believes that the testimony was irrelevant and prejudicial, and that counsel should have moved to have her testimony stricken on those grounds. Pet. at p. 20.  He also believes that the People did not provide prior notice of her being called as a witness. *Id.* at p. 18.  Next, he maintains that there was a *Rosario* violation in which the People did not turn over El-Rahman's written statements to the defense. *Id.* at p. 20.  Lastly, Petitioner contends that counsel failed to properly cross-

examine El-Rahman and failed to request a limiting instruction. *Id.* The record establishes that none of these claims have merit.

The testimony of El-Rahman was clearly relevant. Petitioner denied knowing his co-defendants and the testimony at issue established that not only did he know his co-defendant, but was related to him. SR. at p. 92. That testimony was, therefore, relevant both to show that Petitioner had lied to the police at the scene and to the acting in concert theory on which the case was prosecuted. The state court findings in that record, *see* SR. at p. 91, were clearly not unreasonable.

The record also refutes Petitioner's assertion that he was not provided notice of El-Rahman's testimony. The prosecution specifically advised Petitioner El-Rahman "would be testifying to the to the fact that [Petitioner] and his co-defendant, Willie Carter, were cousins to rebut [Petitioner's] contention that he did not know the individuals with whom he was arrested." SR. at p. 92. Petitioner's factual claim to the contrary is simply erroneous. Petitioner also offers no evidence of a failure on the part of the prosecutor to turn over prior statements of El-Rahman and his claim "is clearly contradicted by the record." *Id.*

Petitioner also has not pointed to any specific problems with his counsel's cross-examination. Instead, he only concludes that counsel "failed to adequately cross-examine. . ." Pet. at p. 20. There is no indication of how a more in-depth cross examination could have helped Petitioner and changed the outcome of the case. Moreover, "[d]ecisions about 'whether to engage in cross-examination, and if so to what extent and in what manner, are . . . strategic in nature' and generally will not support an

ineffective assistance claim." *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002) (quoting *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir.1987)).

Finally, Petitioner asserts that counsel should have requested a jury instruction, related to El-Rahman's testimony, that advised the jury that it should not draw inferences about Petitioner's propensity to commit crimes. Pet. at p. 20. Nothing about El-Rahman's testimony implied a criminal propensity and so no such limiting jury instruction was needed. Counsel, therefore, was not ineffective when he did not request one.

### h. Petitioner's Decision About Whether to Testify

Petitioner asserts that counsel would not allow him to testify. Pet. at pp. 20-21. The record, however, is clear that Petitioner discussed with his attorney the question of whether to testify. SR. at pp. 34 & 91. Petitioner wrote in a letter to his counsel "I truly believe that if I would not have listened to you and testified the verdict would of [sic] been different." SR. at p. 34. This admission by Petitioner indicates that there was a mutual decision made by the pair that he would not testify, and that Petitioner later came to regret that decision. "The question is not whether some other course would have been more successful. That can always be argued after a case has been lost. The question is whether counsel's conduct of the defense was a reasonable course at the time and came within the standards for acceptable representation." *United States v. Aguirre*, 912 F.2d 555, 563 (2d Cir. 1990). The concern about avoiding having Petitioner cross-examined about his prior criminal record, *see* SR. at p. 91, clearly "provid[ed] counsel with a valid reason for not calling his client." *Zeito v. Girdich*, 431 F. Supp. 2d 329, 334 (W.D.N.Y.

2006). "Calling a criminal defendant to testify in his behalf is one of those strategic decisions by defense counsel that a habeas court generally may not, with hindsight, second guess." *Id.* On this record, there is no basis for finding ineffectiveness.

### i. Counsel's failure to preserve the legal sufficiency claim

Petitioner next objects to the failure of trial counsel to properly preserve a legal sufficiency defense for appeal. *See* Traverse at pp. 16-17. While the Appellate Division did find that claim unpreserved, "[t]rial counsel's failure to preserve the legal sufficiency issue for appellate review, standing alone, does not rise to the level of ineffective assistance." *Wade v. Melecio*, 2023 WL 2152489, at *13 (S.D.N.Y. Feb. 22, 2023), *report and recommendation adopted*, 2023 WL 2500676 (S.D.N.Y. Mar. 14, 2023).

Nor could Petitioner show prejudice from the failure to preserve the issue because, as discussed above, there was legally sufficient evidence to support the verdict. *Augugliaro v. Bradt*, 2014 WL 5093849, at *11 (E.D.N.Y. Oct. 8, 2014).

### j. Failure to Object to Summation

Petitioner's final claim under his ineffective assistance of counsel claim is that counsel was constitutionally ineffective for failing to object to the prosecution's summation remarks. Pet. at p. 21. While arguing generally that counsel was ineffective for failing to object to the prosecutor's appeal to sympathy and mischaracterization of the law, Petitioner has failed to identify any specific quotations or sections of the summation remarks that should have been objected to. This type of conclusory claim cannot serve as a basis for an ineffectiveness argument. "It is well-settled in this Circuit that vague and conclusory allegations that are unsupported by specific factual averments are

insufficient to state a viable claim for habeas relief." *Gross v. Graham*, 2016 WL 11621787, at *7 (N.D.N.Y. Aug. 26, 2016. "An important part of trial strategy is deciding when objections are likely to be productive and when they are not." *Glover v. Kirk*, 2020 WL 10316986, at *5 (E.D.N.Y. Apr. 20, 2020). In the context of a summation, defense counsel may make a strategic decision not to object to comments "so as not to draw the jury's attention to them." *Reid v. Giambruno*, 2007 WL 3232497, at *25 (W.D.N.Y. Oct. 31, 2007) (citing cases). Strategic choices "are virtually unchallengeable." *Strickland v. Washington*, 466 U.S. at 690. Having reviewed the record in detail the Court finds that the lack of objections may well have been such a strategic choice in light of the evidence against Petitioner and his defense at trial. Such choices should not be second-guessed many years after the fact.

### D. Ineffective Assistance of Appellate Counsel

Finally, Petitioner asserts that his appellate counsel was constitutionally ineffective. The *Strickland* standard discussed above "applies equally to claims of ineffective assistance by appellate counsel." *Aparicio v. Artuz*, 269 F.3d at 95. Petitioner's claim is based on counsel's failure to argue on direct appeal that the trial court erred when it permitted the amendment to the indictment, and that trial counsel was constitutionally ineffective because he failed to oppose the amendment. Pet. at pp. 25-26.

As set forth above, neither argument was meritorious and so appellate counsel cannot be said to have been ineffective in not raising trial counsel's purported ineffectiveness in not raising the issues. *Huzinec v. United States*, 2022 WL 44706, at *7 (W.D.N.Y. Jan. 5, 2022); *Alcindor v. Schneiderman*, 2017 WL 1383997, at *19 (S.D.N.Y.

Apr. 14, 2017), *report and recommendation adopted*, 2018 WL 583117 (S.D.N.Y. Jan. 25, 2018)

## IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition (Dkt. No. 1) be **DENIED** and **DISMISSED**; and it is further

**RECOMMENDED**, that no Certificate of Appealability ("COA") be issued because Petitioner has failed to make "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2);[4] and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v.*

---

[4] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that, if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation").

*Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:  February 15, 2024
       Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge